# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:19-cv-11654-FDS

ROBERT O'CONNELL,

        Plaintiff,

v.

WILLIAM G. GROSS, JOHN McDONOUGH, ANGELA COLEMAN, and COMMONWEALTH OF MASS. OFFICE OF THE ATTORNEY GENERAL,

        Defendants.

## CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## I.   INTRODUCTION

Defendants William G. Gross, John McDonough, and Angela Coleman, all sued in their official capacities (hereinafter, the "City Defendants" or simply the "City" [1]), hereby move this Honorable Court to dismiss with prejudice all claims against them in the Complaint, ECF No. 1, filed on August 1, 2019 ("Complaint" or "Compl.") by Plaintiff Robert O'Connell ("Plaintiff"). Plaintiff challenges City's practice of imposing fees and time costs for obtaining a license to carry a firearm ("license to carry"), and his challenge is brought under the Second Amendment to the U.S. Constitution. But briefly, Plaintiff's claims against the City are barred because Plaintiff

---

[1] Under 42 U.S.C. § 1983, a claim against City officials or employees in their official capacities is treated as a claim against the City itself. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978); Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Plaintiff's Complaint makes explicit that he is proceeding against the City Defendants in their official capacities. Compl., at Statement of Claim, ¶¶ 7-9. And Plaintiff's Complaint challenges the constitutionality of a practice rather than the particular actions of any defendant. See id. at ¶ 6. Therefore, Plaintiff's claims against the City Defendants should be treated as a claim against the City itself.

brought the same claims back in 2015, and they were dismissed. Moreover, case law makes clear that licensing schemes and attendant costs are perfectly consistent with the preservation of Second Amendment rights. Therefore, as explained more fully below, the City Defendants respectfully request that the Court dismiss with prejudice all of Plaintiff's claims against them.

## II. FACTUAL ALLEGATIONS & PROCEDURAL HISTORY

Plaintiff sues the Office of the Attorney General for the Commonwealth of Massachusetts, as well as the Police Commissioner for the City of Boston and two officers of the Boston Police Department's Licensing Unit in their official capacities. Compl., at Statement of Claim, ¶¶ 7-10. The Complaint challenges the practice of imposing certain costs upon applicants for licenses to carry. Id. at Statement of Claim, ¶ 6. Specifically, Plaintiff challenges the $100.00 application fee and the requirement that applicants obtain a basic firearms safety certificate. Id., at Statement of Claim, ¶¶ 1-2. But Plaintiff admits that these requirements are mandated by state law. Id. (citing Mass. Gen. Laws c. 140, §§ 131, 131P). And in essence, it seems to be the state law that he challenges. See id. at ¶ 3 ("The State Law has no provision for low income people . . . ."). Additionally, however, Plaintiff challenges the City's practice of having applicants establish proficiency with a firearm at the Boston Police Department's firing range on Moon Island in Quincy, MA (the "Moon Island Range"). Id. at ¶ 11. Importantly, Plaintiff does not challenge the constitutionality of this requirement but only challenges the time cost associated with it. Id. ("I am willing to do this if they pay me for the time."). For reasons described more fully below, these allegations fail to state a claim for deprivation of Plaintiff's Second Amendment rights.

But in any event, this is not Plaintiff's first time bringing these allegations. On January 16, 2015, Plaintiff filed a complaint specifically challenging the "nonrefundable fee of $100" and

the requirement that applicants demonstrate proficiency with a firearm at the Moon Island Range.  Compl., O'Connell v. Walsh, No. 1:15-cv-10096-DJC, ECF No. 1, at 1, 3 (D. Mass. Jan. 16, 2015) (filed herewith as Exhibit 1).  The U.S. District Court for the District of Massachusetts dismissed the complaint on ripeness grounds and also because:

> O'Connell has failed to plead allegations demonstrating any particular manner in which the Massachusetts statutory scheme, either on its face or as applied by the licensing authority, improperly infringes on his ability to acquire a license to carry a firearm such that the statutory scheme constitutes a violation of the Second Amendment.

O'Connell v. Walsh, No. 1:15-cv-10096-DJC, 2015 WL 9581735, at *3-4 (D. Mass. Dec. 30, 2015) (Casper, J.).  In the instant case, Plaintiff once again brings the same claims against the same party, and as before, they should be dismissed.

### III.   STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint or count therein must be dismissed where the factual allegations do not plausibly give rise to an entitlement to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The Court is not required to accept Plaintiff's legal conclusions, and mere recitals of the elements of a cause of action, supported only by conclusory statements, will not suffice.  Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Instead, Plaintiff must set forth factual allegations respecting each material element of his claims.  Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008).

### IV.   ARGUMENT

#### A. Plaintiff's Claims Against the City Defendants Are Barred By The Doctrine Of Res Judicata.

Plaintiff's claims against the City Defendants are barred by the doctrine of res judicata. "Federal law principles of res judicata govern the preclusive effect of a prior federal court's judgment on a subsequent action brought in federal court."  Apparel Art Int'l, Inc. v. Amertex

3

Enters. Ltd., 48 F.3d 576, 582, 582 n.7 (1st Cir. 1995).  In particular, res judicata will bar a claim where there is:  "1) a final judgment on the merits in an earlier suit; 2) sufficient identicality between the causes of action asserted in the earlier and later suits; and 3) sufficient identicality between the parties in the two suits."  Id. at 583.  And when res judicata is raised in a motion to dismiss, the Court may consider the record in the earlier action.  Medina-Padilla v. U.S. Aviation Underwriters, Inc., 815 F.3d 83, 85 (1st Cir. 2016).

That record demonstrates that all the above elements are met, and so the doctrine of res judicata bars Plaintiff's instant claims against the City Defendants.  First, there was a final judgment.  Plaintiff's prior complaint was dismissed in its entirety by a Court order allowing a motion to dismiss.  E-docket, O'Connell v. Walsh, No. 1:15-cv-10096-DJC, at ECF Nos. 16-17 (D. Mass. Dec. 30, 2015) (attached hereto as Exhibit 2).  And dismissal under Rule 12(b)(6) "is properly considered a 'final judgment' for federal claim preclusion purposes" where "the dismissal disposed of an entire complaint[.]"  AVX Corp. v. Cabot Corp., 424 F.3d 28, 31-32 (1st Cir. 2005).

Second, Plaintiff's instant claim is identical to the claim he brought in the prior action.  In the prior action, Plaintiff challenged the City's regulatory regime as improperly burdening his Second Amendment rights insofar as it imposed so-called "obstacles" including the same $100.00 fee and the requirement of qualifying at the Boston Police Department's shooting range. Exhibit 1, at Claims, ¶¶ 2, 3.  And in the prior complaint, Plaintiff made explicit that "[l]ow income people should not have to pay any fee(s)."  Id. at Remedy, ¶ 4.  In the instant case, Plaintiff makes the same exact claims.  Once again, he challenges precisely the same requirements regarding application fees and demonstrating proficiency at the Moon Island Range.  Compl., at Statement of Claim, ¶¶ 1-6, 11.

4

Third, the relevant defendants are identical.  In the prior action, Plaintiff nominally sued the Mayor of Boston for what he alleged to be unconstitutional City practices.  Exhibit 1, at Parties, ¶ 2, Claims, ¶¶ 2, 3.  The prior action could only have been brought pursuant to 42 U.S.C. § 1983.  Littler v. Massachusetts, No. 1:17-cv-11277-RGS, 2017 WL 3495173, at *1 n.1 (D. Mass. Aug. 14, 2017) ("It is well established that a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but rather must utilize 42 U.S.C. § 1983.") (internal marks and quotations omitted).  And what is more, the prior complaint did not allege any specific actions of the Mayor but only challenged the City's practices.  Exhibit 1, at Claims, ¶¶ 2, 3.  In sum, Plaintiff sued the Mayor only in his official capacity, and therefore, he was in truth suing the City of Boston.  E.g., Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

It is just so in the instant case.  Plaintiff's claims can only properly be brought pursuant to 42 U.S.C. § 1983.  Littler, 2017 WL 3495173, at *1 n.1.  And the City Defendants are sued only in their official capacities; Plaintiff's Complaint makes that explicit.  Compl., at Statement of Claim, ¶¶ 7-9.  What is more, Plaintiff again does not allege any individual conduct but only challenges the City's practices.  Id. at Statement of Claim, ¶¶ 1-6, 11-12.  And Plaintiff seeks relief from the City, not from its individual employees.  Id., at Relief, ¶¶ 1-4.  Therefore, Plaintiff is again suing the same party:  the City of Boston.  E.g., Graham, 473 U.S. at 165-66.

Because Plaintiff is suing the same party for the same claims which Judge Casper already resolved, the Court should dismiss Plaintiff's claims against the City Defendants.

B. **As A Matter Of Law, The Challenged Practices Are Perfectly Consistent With Plaintiff's Second Amendment Rights.**

Even if Plaintiff's claims are taken on their merits, the challenged practices are perfectly consistent with the Second Amendment for the reasons explained by Judge Casper in her order dismissing Plaintiff's prior case. In the landmark cases of District of Columbia v. Heller, 554 U.S. 570, 635 (2008) and McDonald v. City of Chicago, 561 U.S. 742, 791 (2010), the U.S. Supreme Court recognized an individual Second Amendment right and then applied it to the states. In Gould v. Morgan, 907 F.3d 659, 669 (1st Cir. 2018), the First Circuit adopted this Court's two-step framework for analyzing Second Amendment issues. Under that framework, the court asks whether the challenged law burdens conduct that falls within the scope of the Second Amendment's guarantee. Id. at 668-69. If it does, then the Court must determine and apply the appropriate level of scrutiny, which "must turn on how closely a particular law or policy approaches the core of the Second Amendment right and how heavily it burdens that right." Id. at 669, 670-71.

   1. **The Challenged Provisions Are Outside The Scope Of The Second Amendment.**

The challenged provisions are outside the scope of the Second Amendment. The U.S. Supreme Court has made clear that "incorporation does not imperil every law regulating firearms." McDonald, 561 U.S. at 786. And consistent with this guidance, the First Circuit has repeatedly upheld the lawfulness of the state regulatory scheme. In Hightower v. City of Boston, 693 F.3d 61, 74-75 (1st Cir. 2012), the First Circuit upheld the requirement that licensees provide truthful information on application forms. See also Pineiro v. Gemme, 937 F. Supp. 2d 161, 172 (D. Mass. 2013) ("[I]n Hightower . . . , the court upheld the Massachusetts firearms

licensing scheme set forth in Mass. Gen. Laws ch. 140, § 131."). More recently, the First Circuit observed in Powell v. Tompkins, 783 F.3d 322, 346 (1st Cir. 2015), that:

> Nowhere in its dual decisions did the Supreme Court impugn legislative designs that comprise so-called general prohibition or public welfare regulations aimed at addressing perceived inherent dangers and risks surrounding the public possession of loaded, operable firearms. Rather, the Court attended to legislative substance and endorsed the continuing viability of a range of state firearms regulations without endeavoring to draw Second Amendment lines for state legislative architecture. In fact, along its sojourn, the Court recognized that states have historically executed firearms regulation through general prohibition public safety laws.

(internal citations omitted). The First Circuit recently and expressly reaffirmed these conclusions in Gould. 907 F.3d at 668. And even before the First Circuit clarified the field in Gould, Judge Casper correctly reached this same result on Plaintiff's identical claims. O'Connell v. Walsh, No. 1:15-cv-10096-DJC, 2015 WL 9581735, at *3-4 (D. Mass. Dec. 30, 2015) (collecting cases).

The D.C. Circuit has likewise analyzed reasonable registration fees and costs in the context of the broader statutory regime. In Heller II, the D.C. Circuit found that "fees for registration" and similar provisions were "incidental to the underlying regime" and therefore "lawful insofar as the underlying regime is lawful and hence enforceable." Heller v. Dist. of Columbia, 670 F.3d 1244, 1249 n.* (D.C. Cir. 2011) ("Heller II"). In Heller III, the D.C. Circuit reaffirmed this finding, stating that "reasonable fees associated with the constitutional requirements of registration and fingerprinting are also constitutional." Heller v. Dist. of Columbia, 801 F.3d 264, 278 (D.C. Cir. 2015) ("Heller III").

Here, Plaintiff admits that the relevant fees are mandated by state law, and Massachusetts courts have held that the requirement of qualifying at the Moon Island Range is a valid and reasonable application of the City's authority under the statutory regime. Compl., at Statement

of Claim, ¶¶ 1-2; MacNutt v. Police Comm'r, 30 Mass. App. Ct. 632, 635-36 (1991).  As these requirements are all attendant to a legislative design which is not imperiled by Heller and its progeny, they are outside the scope of the Second Amendment.

### 2. The Challenged Provisions Survive Any Level Of Scrutiny.

In any event, the challenged requirements would pass muster under any level of scrutiny. In Kwong v. Bloomberg, 723 F.3d 160, 167-68 (2d Cir. 2013), the Second Circuit found that a $340 handgun licensing fee was nothing more than a marginal restraint on Second Amendment rights.  And the Second Circuit suggested that intermediate scrutiny was too high a standard to apply to such a marginal restraint.  Id.  Nevertheless, it found that the fee requirement would "easily" survive intermediate scrutiny because it was "designed to allow the City of New York to recover the costs incurred through operating its licensing scheme, which is designed to promote public safety and prevent gun violence."  Id. at 168; see also Bauer v. Becerra, 858 F.3d 1216, 1222-24, 1226-27 (9th Cir. 2017) (applying Second Amendment and holding analogous $19 fee survives intermediate scrutiny).

In Massachusetts, licensing fees have precisely the same goals.  Mass. Gen. Laws c. 140, § 131(i); see also MacNutt, 30 Mass. App. Ct. at 638 ("[T]he central purpose of any duly promulgated license fee . . . is the recovery of the reasonable expenses incident to the licensing.") (internal quotations omitted).  And the First Circuit has expressly held that the Massachusetts licensing regime is designed to advance "compelling governmental interests in both public safety and crime prevention[.]"  Gould, 907 F.3d at 673 (emphasis supplied).  It follows that the fee requirement at issue would survive any level of scrutiny.

The time cost associated with qualifying at the Moon Island Range is narrowly tailored to the same compelling interests.  Again, Plaintiff does not challenge the constitutionality of this

requirement; rather, he specifically challenges the associated cost in time. Compl., at Statement of Claim, ¶ 11 ("I am willing to do this if they pay me for the time."). The City's policy of requiring applicants to qualify at the Moon Island Range is a valid and reasonable exercise of its authority under the state licensing regime. MacNutt, 30 Mass. App. Ct. at 635-36. And as with the fee requirement, time spent qualifying at the Moon Island Range advances compelling interests in public safety and crime prevention. See Gould, 907 F.3d at 673. In particular, the First Circuit recently noted the "credible concern that civilians (even civilians who, like the plaintiffs, are law-abiding citizens) might miss when attempting to use a firearm for self-defense on crowded public streets and, thus, create a deadly risk to innocent bystanders." Id. at 675; see also Heller III, 801 F.3d at 278 (noting evidence that "training in the safe use of firearms promotes public safety by reducing accidents involving firearms"). It follows that the range requirement would survive any level of scrutiny.

In sum, Plaintiff challenges the time and cost of the Massachusetts licensing regime, but as the Second Circuit aptly observed, "the fact that the licensing regime makes the exercise of one's Second Amendment rights more expensive does not mean that it 'substantially burdens' that right." Kwong, 723 F.3d at 167-68.

## V. CONCLUSION

Therefore, for all the foregoing reasons, the City Defendants respectfully request that this Honorable Court dismiss with prejudice the Plaintiff's Complaint and all claims therein against them.

| | |
|---|---|
| Dated: September 10, 2019 | Respectfully submitted, |
| | **DEFENDANTS WILLIAM G. GROSS, JOHN McDONOUGH, and ANGELA COLEMAN, in their official capacities,** |
| | Eugene L. O'Flaherty, Corporation Counsel |
| | By his assistant, |
| | /s/ Matthew M. McGarry<br>Matthew M. McGarry, BBO No. 678363<br>Assistant Corporation Counsel<br>City of Boston Law Department<br>One City Hall Square, Room 615<br>Boston, MA 02201<br>(617) 635-4042<br>matthew.mcgarry@boston.gov |

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, a copy of this document and its exhibits, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants, including paper copies mailed to Plaintiff at the following address:

Mr. Robert O'Connell
5 Fiske Terrace
Allston, MA 02134

| | |
|---|---|
| Dated: September 10, 2019 | /s/ Matthew M. McGarry<br>Matthew M. McGarry |